UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DISCOVERY ORTHO PARTNERS, LLC          :
                                        :
            Plaintiff,                  :
                                        :   10 CV 1729 (HB)
       - against -                      :
                                        :   OPINION &
OSSEOUS TECHNOLOGIES OF AMERICA, INC.,  :   ORDER
                                        :
            Defendants.                 :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge**[*]**:**

Plaintiff Discovery Ortho Partners, LLC ("Plaintiff" or "DOP") offers consulting services to companies that develop and market medical and dental products and technologies. DOP entered into an agreement to provide such services to Defendant Osseous Technologies of America, Inc. ("OTA" or "Defendant"), a corporation that develops and markets sinus and dental surgery-related products and technology. DOP brings suit against OTA for breach of contract and unjust enrichment, because OTA allegedly failed to compensate them as specified by a written agreement between the companies. OTA has moved to dismiss the complaint for lack of diversity jurisdiction or, alternatively, under the *Colorado River* abstention doctrine. For the reasons that follow, Defendant's motion to dismiss is DENIED.

## I.   BACKGROUND

DOP is a limited liability company registered in Delaware, with its principal place of business in New York City. Am. Compl. ¶ 1. The primary source of dispute on this motion is DOP's citizenship, and it claims to be an LLC comprised of only four members, three of whom are citizens of New York and one of whom is a citizen of North Carolina. *Id.* ¶ 3; *see also* Mullen Decl. ¶¶ 9-16. OTA is a Delaware corporation with its primary office located in Newport Beach, California. Am. Compl. ¶ 2.

This case arises out of a consulting relationship that soured. Plaintiff was hired by Defendant to find business partners to market and develop their dental and medical products, and in December 2008, the two companies entered into a written agreement to govern this

---

[*] Stephen S. Mar, a third-year law student at New York University School of Law, and a summer 2010 intern, provided substantial assistance in researching and drafting this Opinion.

1

relationship. *See* Am. Compl. ¶¶ 7-13.  Under this agreement, DOP was to perform "certain marketing and business development services" for OTA's sinus and dental products and technologies.  *Id.* ¶¶ 5-7; Ex. A (copy of original agreement).  In exchange for such work, DOP would receive a percentage of the value of any "final license or asset sale transaction" that the company helped OTA obtain.  *See Id.*, Ex. A at 3.  In January 2009, the parties allegedly agreed upon an addendum to the written agreement.  The addendum increased DOP's percentage share from 5% to 8.5% of the overall value of the deal, and broadened the scope of compensable activities.  *Id.* ¶¶ 15-17; Ex. B (copy of addendum).

OTA allegedly breached its contract with DOP, after DOP successfully brokered a business relationship with a company called Zimmer, Inc., and its subsidiary, Zimmer Dental (collectively "Zimmer").  *See* Am. Compl. ¶¶ 19-20.  According to Plaintiff, DOP expended significant capital, time, and resources to develop a "comprehensive strategic plan" to reach prospective business partners for OTA, including Zimmer.  *Id.* ¶¶ 21-23.  Over the course of 2009, DOP worked to develop a licensing and distribution agreement with Zimmer.  Although some last-minute issues arose, in June 2009 a distribution agreement between OTA and Zimmer was established.  *See id.* ¶¶ 30-40.

Despite the successful development of this agreement, Plaintiff claims that OTA failed to compensate DOP according to the terms of the Agreement, allegedly because OTA said that it "had not realized that it was 'a lot of money.'"  Am. Compl. ¶ 44.  Plaintiff brings causes of action for breach of contract and unjust enrichment.  *Id.* ¶¶ 51-59.  Defendant has moved to dismiss for two reasons.  First, Defendant claims DOP lacks diversity jurisdiction, because one of DOP's members is allegedly a citizen of California, which is OTA's domicile state.  In the alternative, Defendant asks this Court to either dismiss or stay the proceedings under the "parallel proceeding" abstention doctrine developed in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  Defendant alleges that Plaintiff's suit is duplicative of a state action that OTA filed against DOP in California state court, which is now on appeal.

## II.  DISCUSSION

### A. Diversity Jurisdiction
#### 1. Legal Standard

On a motion to dismiss for lack of diversity jurisdiction pursuant to Rule 12(b)(1), "the party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Sharkey v. Quarantillo*, 541 F.3d 75, 82-83 (2d Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Diversity jurisdiction requires complete diversity amongst the parties.  *See* 28 U.S.C. § 1332(a).  It exists if and only if "the citizenship of each plaintiff is diverse from the citizenship of each defendant," *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996), meaning that no plaintiff may be a citizen of a state where any defendant is also a citizen. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  The citizenship status of the parties at the time the complaint was filed are controlling for diversity jurisdiction purposes. *See Leblanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.").

   2.   Analysis

The jurisdictional issue presently before this Court comes to this: is one of Plaintiff's members a citizen of California?  The parties do not dispute that Defendant is a citizen of California.  A corporation's citizenship is usually determined by its state of incorporation as well as the state where it has its principal place of business.  *See Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1185 (2010); 28 U.S.C. § 1332(c)(1).  To determine a corporation's "principal place of business," courts are instructed to use the so-called "nerve center approach."  *Hertz Corp.*, 130 S.Ct. at 1186.  Under this approach, "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities," which usually means the state where the corporation's headquarters is located, "provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings."  *Id.* at 1192.  The parties agree that OTA was incorporated in Delaware and has its only office in California.  Defendant additionally alleges that OTA's California office serves as the center of its business, and Plaintiff does not contest this fact.

As a limited liability corporation or "LLC," Plaintiff's citizenship is a more muddled and contested issue.  Unlike corporations, the citizenship of an unincorporated association depends on the citizenships of all the individual members of the partnership.  *See Carden v. Arkoma*

*Assocs.*, 494 U.S. 185, 195-96 (1990) (finding that limited partnership must look to citizenship of all members). A limited liability company in particular is deemed to be a citizen of all states of which its partners or members are citizens. *See UBS Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 n.5 (S.D.N.Y. 2010) (citing *Carden,* 494 U.S. at 195-96; *Handelsman v. Bedford Vill. Assocs. Ltd.,* 213 F.3d 48, 51-52 (2d Cir. 2000)).[1] Thus for diversity jurisdiction to exist, the citizenship of each member or partner of an LLC must be different from the citizenship of each opposing party. Plaintiff claims that it is comprised of four members, three of whom are citizens of and domiciled in New York; and one of whom is a citizen of and domiciled in North Carolina. OTA, however, alleges that DOP is comprised of only two members, and that one of them, Steven Reineck, is a citizen of and domiciled in California. This disagreement is dispositive: If Plaintiff is correct, then complete diversity exists because none of DOP's members are citizens of California or Delaware. But if Defendant is correct, then diversity is destroyed because Plaintiff and Defendant are both citizens of California.

Plaintiff's claims are predicated on the allegations in its Amended Complaint, and supported by a declaration from Paddy Mullen, DOP's president, CEO, and founder. Ms. Mullen avers in her Declaration that she is the primary member of DOP, holding a 95.5% ownership interest in the company, and that there are three other individual members of DOP that own the remaining 4.5% ownership interest, none of whom reside in California. *See* Mullen Decl. ¶ 11; *see also* Am. Compl. ¶ 3. By contrast, Defendant provides a declaration from William Knox, OTA's president and majority shareholder, to support its claim that DOP had two members, one of whom is domiciled in California. Mr. Knox asserts that in the course of negotiations between DOP and OTA, Ms. Mullen and Mr. Reinecke represented themselves to be the sole members of DOP. Knox Decl. ¶ 5. Mr. Knox also claims that both DOP's website and a letter from Mr. Reinecke name Mr. Reinecke as DOP's "Managing Director," and that Ms. Mullen and Mr. Knox referred to each other as "partner[s]" and "50% equal partners." *Id.* ¶¶ 5-8. DOP responded to these claims with an affidavit from Mr. Reinecke himself, which states that he is not and has never been a member of DOP. Reinecke Aff. ¶ 2. Ms. Mullen's declaration

---

[1] In the context of LLCs, the terms "members" and "partners" are generally interchangeable, although "member" is more often used in conjunction with LLCs, while "partner" is more often used in conjunction with partnerships. One of the defining characteristics of a partner or member is that such individuals owe fiduciary duties to each other by virtue of being members or partners of the same organization. *See, e.g.*, *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) ("Federal and state courts have recognized that members of a limited liability company, like partners in a partnership, owe a fiduciary duty of loyalty to fellow members.").

also states that Mr. Reinecke has never been a member of DOP.  Mullen Decl. ¶ 9.  They aver that Mr. Reinecke's title of "Managing Director" is in name only and is meant, for business marketing purposes, to represent the fact that Mr. Reinecke has provided ongoing independent consultation for DOP.  Notably absent from either party's submissions is any documentary evidence directly related to the LLC's membership, such as a charter or tax returns, which could provide more definitive proof of DOP's membership.

Based on the limited facts presented, I find that Plaintiff has sufficiently established diversity jurisdiction at the pleading stage.  Although DOP has not eliminated any doubt as to its membership, it has supplied sufficient factual pleadings supported by the Mullen Declaration to at least tentatively demonstrate that subject-matter jurisdiction exists.  On the other hand, OTA has not clearly established that Mr. Reinecke is a member of the LLC such that complete diversity would be destroyed.  The fact that Mr. Reinecke may be a "Managing Director" of DOP, as Defendant argues, does not mean that Mr. Reinecke is a *member* of DOP that shares an ownership interest in DOP; it merely shows that Mr. Reinecke is somehow affiliated with DOP.  Put another way, the two positions are not mutually exclusive; it is possible to be a director of an LLC without being an equity-sharing member, and vice versa.  Indeed, Plaintiff avers, both in its Complaint and throughout Ms. Mullen's and Mr. Reinecke's Declarations, that Mr. Reinecke is not a member of DOP.  Given that Plaintiff has provided a colorable claim and has pled facts sufficient to establish diversity jurisdiction, this Court is unwilling to dismiss this case at the pleading stage based on Defendant's mere allegations to the contrary.

It should be noted that Plaintiff's claims of complete diversity are not exactly air-tight, particularly since they have failed to provide any documents which would answer the question of LLC membership more definitively.  A court's ability to hear a case is predicated on subject matter jurisdiction, and "[i]f a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (internal quotations omitted); *see also* Fed. R. Civ. P. 12(h)(3).  As such, "a litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action."  *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).  Plaintiff will be sure to provide Defendant with further documentation of its LLC membership, such as tax forms, charter, or operating agreement, as part of its discovery obligations.  Since DOP has already provided a declaration and affidavit, which both state upon

penalty of perjury that Mr. Reinecke is not an LLC member, I am certain Plaintiff will be able to easily confirm their sworn claims with further documentation.

### B. *Colorado River* Abstention Doctrine

#### 1. Legal Standard

Defendant argues that, if the Court finds diversity jurisdiction, it should still abstain from this case in favor of a similar state action. Generally speaking, "[a]bstention is an 'extraordinary and narrow' exception to a federal court's duty to exercise its jurisdiction," *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999) (citing *In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir. 1996)), and *Colorado River* abstention is no different. "Under the *Colorado River* exception the court may abstain in order to conserve federal judicial resources only in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Woodford v. Cmty. Action Agency of Greene Cty., Inc.* 239 F.3d 517, 522 (2d Cir. 2001) (quoting *Colorado River,* 424 U.S. at 813). Where a concurrent or parallel state proceeding exists, courts should balance six factors in weighing abstention: (1) whether the controversy involves a res over which one court has assumed jurisdiction; (2) whether the federal forum is less convenient for the parties; (3) whether staying/dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed; (5) whether federal law provides the rule of decision; and (6) whether state procedures are adequate to protect plaintiff's federal rights. *See Woodford*, 239 F.3d at 522. Situations in which dismissal under this abstention doctrine exists are "considerably more limited" than even the other three abstention doctrines developed by the Supreme Court, making such circumstances "exceptional," although not nonexistent. *Colorado River*, 424 U.S. at 818.

#### 2. Analysis

Defendant argues that, prior to the filing of this suit by DOP, it brought a parallel state court action in California, and the *Colorado River* factors support abstention in favor of the state proceeding. On July 2, 2009, OTA brought suit in a Superior Court of the State of California, seeking a declaratory judgment that it was not obligated to pay the amounts claimed by DOP pursuant to the agreement between the two parties. *See* Azadian Decl., Ex. B (Complaint for Declaratory Relief). On September 25, 2009, Judge Linda Marks held that a declaratory judgment determination was "not necessary or proper under the circumstances," and sustained

DOP's demurrer to OTA's complaint.  *See* Mullen Decl., Ex. F (Minute Order of Judge Marks). On October 15, 2009, OTA appealed this decision to the California Appellate Court, Fourth Appellate District, where it is currently pending.  *See* Azadian Decl. Ex. C (California Appellate Courts Docket Sheet for *Osseous Technologies of America, Inc. v. Discoveryortho Partners LLC*, # G042747).

OTA fails to show the exceptional circumstances that warrant abstention.  Since the California declaratory action is predicated solely on the interpretation of the same agreement between the parties that DOP alleges was breached in this diversity suit, the proceedings are indeed parallel.  *See Royal & Sun Alliance Ins. Co. v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). However, the California Superior Court already rendered a decision that dismissed OTA's declaratory action, because "the complaint is nothing more than a 'breach of contract' action" and a declaratory judgment would only circumvent trying the contract issue before a jury.  *See* Mullen Decl., Ex. F.  To abstain from moving forward with the very sort of breach of contract action that Judge Marks rightfully thought this dispute was about, simply because Defendant thinks it may ultimately prevail upon appeal, makes little sense.
In addition to the fact that the basic nature of these parallel proceedings indicate that abstention is not necessary or warranted, the balance of factors delineated in *Colorado River* also do not favor abstention.  There is no *res* or property that is relevant to the dispute.  *See Woodford*, 239 F.3d at 522 ("the absence of a res point[s] toward exercise of federal jurisdiction.") (quoting *Vill. of Westfield v. Welch's,* 170 F.3d 116, 122 (2d Cir.1999)).  While it is true that Defendant's primary business operations are in California, OTA does business in New York and raises no particularly strong reasons why litigating this suit in New York, where Plaintiff is located, would be unduly burdensome or inconvenient.  Further, unlike cases where there are "hundreds of claims and numerous parties," that implicate "significant local interests," *see, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 211 (2d Cir. 1985), this straightforward suit is of no unique interest to California and bears little risk of piecemeal litigation that would waste judicial resources.  *See also Prosperity Realty, Inc. v. Haco-Canon*, 724 F. Supp. 254, 257 (S.D.N.Y. 1989) ("The fact that state law provides the rule of decision in this case, a truism in diversity cases, does not militate strongly *against* the exercise of federal jurisdiction, because no novel or unique state law issues are involved.").  Nor is the state action necessarily sufficient to protect the federal plaintiff's rights since, as Judge Marks indicated in her minute order, it could

be seen as an attempt to avoid a jury trial of the contract dispute. The only factor that weighs even partially in Defendant's favor is the fact that the state court action was filed first. However, even this is worth little weight because there has been little progress in resolving the substantive question of whether OTA is in breach of its agreement with DOP. *See Arkwright-Boston*, 762 F.2d at 211 ("this factor is considered in a common-sense manner by examining how much progress has been made in each forum.") (citing *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21-22 (1983)). There is no good reason to abstain in this case.[2]

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

**SO ORDERED**
**August 16, 2010**
**New York, New York**

Hon. Harold Baer, Jr.
U.S.D.J.

---

[2] Defendant claims to reserve the right to "seek dismissal for improper venue or to seek transfer of venue to the more convenient forum (the United States District Court for the Central District of California) before any answer is filed." Def.'s Mem. of Law at 16. Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed.R.Civ.P. 12(g)(2). Venue in particular is a defense that may be waived by failure to raise it in a pre-answer motion or responsive pleadings. *See Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 261 (2d Cir. 2002). As such, I will not consider another motion at this stage of the litigation on the issue of venue. Absent some compelling reason why this Court cannot maintain this action, the parties should move forward on the substance of this breach of contract claim.

8